UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRENCE MITCHELL,

        Plaintiff,

      v.

COSTELLO SURY & ROONEY, P.C., and
MC PROPERTY MANAGEMENT CORP.,

        Defendants.

No. 25 CV 2801

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Defendant Costello Sury & Rooney, P.C. filed an eviction and collection action against plaintiff Terrence Mitchell on behalf of the Condos of Mill Creek, where Mitchell resided. The lawsuit was settled and nonsuited. Attached to the eviction complaint was a notice of debt for $250 in mailing costs charged by Costello Sury & Rooney and a $125 "unit owner expense" charged by defendant MC Property Management Corporation for turning over paperwork to Costello Sury & Rooney. Mitchell sues the defendants for violations of the Fair Debt Collection Practices Act, the Illinois Consumer Fraud Act, and unjust enrichment. Costello Sury & Rooney moves for judgment on the pleadings. MC Property Management moves to dismiss for failure to state a claim. For the reasons discussed below, the motions are granted.

## I.    Legal Standards

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings" to "dispose of the case on the basis of the underlying substantive merits."

Fed. R. Civ. P. 12(c); *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518 (7th Cir. 2025) (internal quotation marks and citation omitted). To survive a Rule 12(c) challenge to the sufficiency of the complaint, the complaint must meet the Rule 12(b)(6) motion to dismiss standard. *Wolf*, 132 F.4th at 518–19. For both dismissals under Rules 12(b)(6) and 12(c), a complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the complaint, accepted as true, must "raise a right to relief above the speculative level." *Wolf*, 132 F.4th at 519 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

## III.  Facts

Plaintiff Terrence Mitchell lived at the Condos of Mill Creek. [1] ¶ 15.[1] In 2024, defendant Costello Sury & Rooney filed an eviction and collection action in the Circuit Court of Cook County against Mitchell on behalf of the Condos. [1] ¶ 16. Attached to the complaint was a "validation notice" or "notice of debt" showing Mitchell had been

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed on the top of filings. The facts are taken from the plaintiff's complaint, [1].

charged $250 in "mailing costs." [1] ¶ 17; [1-1] at 3.[2] Also attached to the complaint were ledgers prepared by defendant MC Property Management Corporation, including a $125 "unit owner expense" that the management company charged Mitchell for turning over his file to Costello Sury & Rooney. [1] ¶¶ 19–20; [1-1] at 7. The charges for $250 and $125 were subsumed in a total amount of debt alleged to be $2,218.08, and the eviction complaint sought $2,657.32. [1-1] at 2–3. The lawsuit was settled and nonsuited. [1] ¶ 24. Plaintiff paid the $2,657.32 sought in the eviction complaint. [1] ¶ 24.

## IV.    Analysis

Mitchell alleges that MC Property Management violated the Illinois Consumer Fraud Act by adding unauthorized sums to debts and collecting the unauthorized sums. [1] ¶¶ 49–51. He alleges that Costello Sury & Rooney violated the Fair Debt Collection Practices Act by filing a lawsuit demanding payment of the same unauthorized sums. [1] ¶¶ 33–41. He also alleges an unjust enrichment claim against both defendants. [1] ¶¶ 59–61.

### A.    The Illinois Consumer Fraud Act and the Fair Debt Collection Practices Act

The Illinois Consumer Fraud Act "protects consumers against unfair or deceptive acts or practices, including fraud, false promise, and the misrepresentation or the concealment, suppression, or omission of any material fact." *Rao v. J.P. Morgan Chase Bank. N.A.*, 153 F.4th 541, 555 (7th Cir. 2025) (internal quotation marks and

---

[2] Costello Sury & Rooney says, and Mitchell agrees, that these were really "legal fees," but the notice was misprinted and shifted the dollar amounts down one row. [26] at 3; [27] at 15.

citation omitted). The elements of an ICFA claim are: (1) "a deceptive or unfair act or practice by the defendant;" (2) "the defendant's intent that the plaintiff rely on the deceptive or unfair practice;" and (3) "the unfair or deceptive practices occurred during a course of conduct involving trade or commerce." *Id.* at 555–56. A plaintiff may allege an ICFA violation based on a misrepresentation of a debt allegedly owed. *See, e.g.*, *People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill.2d 1, 12, 16 (1991) (company alleged to have misrepresented the amounts allegedly owed for violating Chicago parking ordinances).

The Fair Debt Collection Practices Act prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The "false representation of … the character, amount, or legal status of any debt" is a violation of this section of the FDCPA. 15 U.S.C. § 1692e(2)(A). So is the "use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt," including collecting any amount unless it is "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Mitchell alleges that the $125 "unit owner expense" and $250 "mailing cost" fees were not authorized under the Illinois Condominium Property Act, 765 ILCS 605/1, et seq., and so charging him for those fees violated the state and federal statutes against deceptive or unfair debt collection practices. Defendants argue that

the fees were authorized under the Condominium Property Act because the fees were allowed under the recorded condominium declaration for the Condos of Mills Creek.

The Illinois Condominium Property Act bars "fees pertaining to the collection of a unit owner's financial obligation, including fees charged by a manager or managing agent," unless the "authority to add the management fees to an owner's respective share of the common expenses is specifically stated in the declaration or bylaws of the Association." 765 ILCS 605/9.2(c).

Mitchell does not attach the full recorded declaration of the Condos of Mill Creek to his complaint. He does attach one portion of the declaration, the ninth amendment to the declaration. [1-1] at 11–17. MC Property Management attaches the entire condo association's declaration to its motion to dismiss. [23] at 15–56.[3] I may consider documents that are "incorporated into the complaint by reference." *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025). Because the complaint references the declaration, and attaches an amendment to the declaration, I consider the full declaration.

The declaration states, in relevant part, [23] at 32:

> If an Owner is in default in the monthly payment of the aforesaid charges or assessments for thirty (30) days, the members of the Board may bring suit for and on behalf of themselves as representatives of all Owners, to enforce collection thereof or to foreclose the lien therefore as hereinafter provided; and there shall be added to the amounts due the costs of said suit, and other fees and expenses together with legal interest and reasonable attorneys' fees to be fixed by the Court.

---

[3] Mitchell does not contest that the declaration was recorded.

5

Mitchell says that the provision is not specific enough to cover MC Property Management's fees. Generally, each party is responsible for its own attorney fees and costs. *Willis Cap. LLC v. Belvedere Trading LLC*, 2015 IL App (1st) 132183, ¶ 24. Parties to a contract may agree otherwise, and if they do, the fee-shifting provision of the contract is strictly construed. *Hahn v. McElroy*, 2023 IL App (2d) 220403, ¶ 45. To "strictly construe" a text, "one construes it to mean nothing more—but also nothing less—than the letter of the text." *Id.* (internal quotation marks and citation omitted). Here, the declaration allows for the costs of any lawsuit to enforce collection, and fees and expenses, legal interest, and reasonable attorneys' fees associated with that suit. Strictly construed, that includes "other fees and expenses," including fees for turning over a file to the debt collector and mailing costs associated with the suit.

Mitchell's authority is not to the contrary. In each of the cited cases, the court found that *attorneys' fees* had not been included in the contract language or were not applicable under the relevant contract language. There was no discussion of other costs and fees. *See Concrete Structures/Sachi, J.V. v. Clark/Bulley/OVC/Power*, 2024 IL App (1st) 240082, ¶ 24–29 (attorneys' fees not allowed because defendants did not breach provisions of the contract that would give rise to attorneys' fees); *Negro Nest, LLC v. Mid-Northern Mgmt., Inc.*, 362 Ill.App.3d 640, 642, 649, 651 (4th Dist. 2005) (contract provision called for "all collection costs," and "makes no mention of attorney fees," so no attorneys' fees were awarded, as "Illinois courts have consistently refused to read attorney fees into imprecise language"); *Willis Cap.*, 2015 IL App (1st) 132183, ¶ 25 (contract provided for attorneys' fees for the prevailing

6

party in an action brought "to enforce the terms" of the agreement, so attorneys' fees in in action to *invalidate* the agreement were improperly awarded).

The declaration allows for both attorneys' fees and "other fees and expenses." [23] at 32. The complaint alleges that Costello Sury & Rooney filed an eviction and collection action against Mitchell. [1] ¶ 16. Attached to the complaint was a ledger that included a $125 "unit owner expense," which was "a charge by [MC Property Management] for handing over the file to CSR." [1] ¶¶ 19–20. The complaint also alleges that a "validation notice" or "notice of debt" attached to the complaint showed that Mitchell had been charged $250 in "mailing costs" by Costello Sury & Rooney. [1] ¶ 17. As alleged, both charges were fees or expenses incurred in bringing the eviction action. They fall under the declaration's language and so are allowed.

Mitchell argues that the $125 "unit owner expense" was not authorized because the fee is imposed regardless of whether suit is ever filed. But an eviction action *was* filed here, and so Mitchell's argument is not supported by the allegations in his complaint. The declaration specifically authorizes adding other fees and expenses onto the amounts due when the condo association brings suit to enforce collection of amounts due, as Mitchell alleges happened here. The declaration warns condo owners that if the board files suit, all fees and charges are on the table for recovery. No further specificity is necessary.

Costello Sury & Rooney says, and Mitchell agrees, that the $250 for "mailing costs" was really for legal fees, and the notice of debt had a printing error that shifted the dollar amounts down one row. Mitchell argues that the misprint still violated the

7

FDCPA because it was deceptively labeled a mailing cost. But the debt notice did not misrepresent the character or amount of fees that Mitchell owed to Costello Sury & Rooney. The notice told Mitchell how much he owed the firm for the costs of the suit. Whether that was $250 for legal fees or mailing costs, either were allowed under the condo declaration and it was clear the fees were related to the eviction action. The misprint did not violate the FDCPA.

Because the fees were allowed in the declaration, there is no violation of the Condominium Property Act, and no violation of ICFA or the FDCPA. The ICFA claims are dismissed. Judgment is granted for Costello Sury & Rooney on the FDCPA claims.[4]

### B.     Unjust Enrichment

Finally, Mitchell alleges an unjust enrichment claim against both defendants. [1] ¶¶ 59–61. There is no standalone cause of action for unjust enrichment in Illinois. *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). Because Mitchell's unjust enrichment claim rests on the same improper conduct alleged in his ICFA and FDCPA claims, his unjust enrichment claim is "tied to [these] related claim[s]," and "will stand or fall with the related claim[s]." *Id.* (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Because Mitchell fails to allege either an ICFA or FDCPA violation, he also fails to allege an unjust enrichment claim.

---

[4] Because I find that there was no ICFA or FDCPA violation, I do not reach MC Property Management's arguments that Mitchell should have brought this case as a derivative action or that the ICFA does not allow a remedy that runs counter to the Condominium Property Act.

## IV. Conclusion

MC Property Management Company's motion to dismiss, [23], and Costello Sury & Rooney's motion for judgment on the pleadings, [26], are granted. Mitchell's claims against MC Property Management for unjust enrichment and for violations of ICFA are dismissed with prejudice.[5] Judgment is entered in favor of Costello Sury & Rooney on his claims for unjust enrichment and violations of the FDCPA. Terminate civil case.

ENTER:

_Manish S. Shah_
Manish S. Shah
United States District Judge

Date: November 3, 2025

---

[5] Mitchell's claims are dismissed with prejudice because any amendment would be futile. *See Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). The fees charged here are allowed under the condo's declaration and therefore are valid under the Condominium Property Act. No amendment would change the outcome.